**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|                          |     |                          |
| ------------------------ | --- | ------------------------ |
|                          | :   |                          |
| THOMAS CAVES,            | :   |                          |
| Plaintiff,               | :   | No. 3:20-cv-15 (KAD)    |
|                          | :   |                          |
| v.                       | :   |                          |
|                          | :   |                          |
| PAYNE, et al.,           | :   |                          |
| Defendants.              | :   |                          |
|                          | :   |                          |

**INITIAL REVIEW ORDER**

Kari A. Dooley, United States District Judge

Plaintiff, Thomas Caves ("Caves"), currently confined at Corrigan-Radgowski

Correctional Center in Uncasville, Connecticut, filed this action *pro se* under 42 U.S.C. § 1983.

In his amended complaint, filed March 24, 2020, Caves challenges his classification as a

Security Risk Group member and placement in the SRG Program. He raises both constitutional

and non-constitutional claims. The defendants are Intelligence Officer Payne, Intelligence

Officer Dawson, Disciplinary Hearing Officer Lieutenant Cusiak, Security Risk Group

Coordinator Captain Papoosha, District Administrator Martin, Director of Security Santiago, and

Commissioner of Correction Cook. Caves names the defendants in individual and official

capacities and seeks damages as well as declaratory and injunctive relief.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review

prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious,

that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a

defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On March 4, 2019, Caves entered New Haven Correctional Center as a pretrial detainee. Doc. No. 7 ¶¶ 4, 14.[1] On March 12, 2019, Caves was called to the intelligence office where he met with Officers Payne and Dawson to discuss his Facebook account. *Id.* ¶ 15. Officer Payne prepared a Security Risk Group ("SRG") designation form placing Caves in segregation because letters or numbers, Facebook filters, emojis, and comments from other users on posted pictures suggested SRG involvement. *Id.* Caves told Officers Payne and Dawson that his posts did not reflect gang activity; they were expressions of music, art, and other forms of entertainment intended to elicit "likes" on his page. *Id.* ¶ 16.

Officer Payne said the posts were enough to support an SRG designation and signed his

---

[1] Caves was sentenced on January 15, 2020. The events described in the complaint all pre-date his sentencing.

own report as a reviewer . *Id.* ¶ 17. He told Caves that he was not allowed witnesses or an advocate and sent him back to his cell. *Id.* Officer Payne falsely stated in the report that Caves admitted gang membership. *Id.* About 4:00 p.m. that afternoon, Officers Payne and Dawson brought Caves to the restrictive housing unit ("RHU") to be designated SRG even though he had not received a disciplinary charge or violated any facility rule. *Id.* ¶ 19.

On March 13, 2019, less than twenty-four hours later and without any prior notice, Caves attended an SRG hearing before Lieutenant Cusiak. *Id.* ¶¶ 20,22. Caves was not permitted to speak or present a defense at the hearing. *Id.* ¶ 21. He was found guilty of SRG membership based on the Facebook post. *Id.* Caves notes that, previously, he filed a grievance against Lieutenant Cusiak and had named him in a lawsuit. *Id.* ¶ 22. Lieutenant Cusiak told Caves that if he did not sign a form to go to Phase 3, presumably of the SRG Program, he would be sent to Phase 1, a "worse place" where he would spend a longer time. *Id.* ¶ 23. Caves then signed the form. *Id.*¶ 24.

On March 20, 2019, Caves was brought to the A&P room in New Haven Correctional Center to be taken to court. *Id.* ¶ 25. Three SRG members were there, two designated SRG Bloods, one SRG Crips. *Id.* One inmate, an SRG Bloods, asked Caves about his SRG designation. *Id.* When Caves said, "Crips" but denied membership, the inmate told Caves not to enter the cell. *Id.* The correctional officer laughed and forced Caves to enter the cell where he was assaulted by two inmates. *Id.* Caves was treated in the medical unit for a split lip, swollen eye, and bruised face. *Id.* ¶ 26. His court date was postponed. *Id.*

On March 22, 2019, Caves was transferred to Corrigan-Radgowski Correctional Center ("Corrigan") and housed in a segregated unit for SRG members. *Id.* ¶ 27. In April, Captain

Papoosha toured the housing unit and spoke to Caves at his cell. *Id*. ¶ 28. Caves told Captain Papoosha that he was not a gang member and explained that his Facebook page was just an expression of music, art, and other entertainment. *Id*. Caves told Captain Papoosha that, because he was not a gang member, he was at risk of assault by members of every gang. *Id*. Captain Papoosha walked away stating "well if you post stupid gang stuff then you're going to a gang unit." *Id*. Caves submitted a letter, a grievance, and a grievance appeal which were denied or ignored by defendants Martin and Santiago. *Id*. ¶ 29.

On June 6, 2019, Caves was involved in a physical altercation. *Id*. ¶ 30. He received sanctions for defending himself. *Id*. One sanction required him to re-start Phase 3 thereby extending his stay in the unit for five months. *Id*. On July 30, 2019, Caves was assaulted by a member of the SRG Grape Street Crips because he was not a member of that gang. *Id*. ¶ 31. Caves again had to re-start Phase 3 because he defended himself. *Id*.

In September 2019, Director Santiago reviewed Caves' SRG designation. *Id*. ¶ 32. The review, overseen by defendants Papoosha and Cook, found no wrongdoing in the designation process and determined that Caves would remain in segregation. *Id*. Caves' stay in segregation will be approximately 380 days. *Id*. ¶ 33. No member of the SRG Crips ever identified Caves as a member. *Id*. ¶ 57.

Caves receives no programming while in segregation. *Id*. ¶ 35. He is forced to share a cell; with an inmate from a rival gang. *Id*. ¶ 36. Caves alleges that he was in population for seven years, presumably on a prior conviction, but is now considered a threat because of his Facebook posts. *Id*. ¶ 38. Caves contends that he displayed no threat of violence, such as recruiting gang members, conducting gang meetings, or assaulting other inmates, while he was in general

population. *Id.* ¶ 39.

      In the SRG Program, Caves cannot exercise in the dayroom; he can exercise only during the 45 minutes per week in the gym. *Id.* ¶ 42. Caves, a Muslim, cannot attend congregate religious services as he should. *Id.* ¶ 43. Caves describes the following conditions of confinement in the SRG unit: confinement in his cell for 23 hours per day instead of receiving six hours of recreation per day like non-SRG pretrial detainees; between one and three phone calls per day instead of six calls per day in general population; sharing a cell with a member of a rival gang which creates a risk of harm; the ability to spend only $25.00 - $40.00 per week at the commissary with limits on items that can be purchased instead of $75.00 - $150.00 per week with no limits; eating in the cell near the toilet; 45 minutes of exercise per week instead of one hour per day; visits only from immediate family; no library, school, vocational education, religious services, programs for early release, or risk reduction earned credit; dirty showers; limited access to medical care as each "wall" is called every 2-3 weeks; more frequent and longer lock-downs because codes take longer to evaluate and clear; more frequent cell searches; and body searches every time he leaves his cell. *Id.* ¶ 45. Caves' confinement under these conditions is "unlimited and indefinite." *Id.* ¶ 46. Caves alleges that segregated confinement causes him to experience psychological, emotional, and physical anguish, distress, pain, and harm. *Id.* During the 53 weeks Caves has been designated SRG, he has been permitted recreation in the gym only 22 times. *Id.* ¶ 48.

      Caves alleges that the commissary sells music including language that was used as an SRG identifier against him. *Id.* ¶ 50. He contends that the rap artists recording that music use letter replacements, have names including SRG references, and wear clothing attributable to

gangs. *Id.*

**Discussion**

Caves brings the following claims: (1) all defendants violated his First Amendment rights by confining him in segregation in retaliation for his social media posts; (2) all defendants violated his Fourteenth Amendment right to substantive due process by confining him in the SRG Program as a pretrial detainee; (3) defendants Papoosha, Santiago, and Cook violated his First Amendment right to exercise his religion by denying participation in religious services; (4) all defendants violated his Fourteenth Amendment right to procedural due process at the disciplinary hearing by denying witnesses or an advocate at the hearing; (5) all defendants denied his Fourteenth Amendment right to procedural due process by requiring him to attend a disciplinary hearing without 24-hour advance notice, a chance to prepare a defense, an opportunity to be heard, and before a biased hearing officer; (6) all defendants violated his right to due process by using false self-admissions and denials on reports; (7) defendants Martin, Papoosha, and Santiago violated his Fourteenth Amendment rights by denying his grievances, appeals, and letters; (8) defendants Papoosha, Santiago, and Cook violated his Fourteenth Amendment rights by denying adequate out-of-cell exercise time; (9) all defendants violated his Fourteenth Amendment rights by making the SRG program so segregated that it delays medical care; (10) negligence; and (11) intentional infliction of emotional distress.[2]

---

[2] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367; *see also Nicholson v. Lenczewski*, 356 F. Supp. 2d 165-66 (D. Conn. 2005). On the other hand, if

**First Amendment Retaliation Claim**

In his first claim, Caves argues that the defendants retaliated against him for exercising his First Amendment right to post on social media. To state a cognizable First Amendment retaliation claim, Caves must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted)).

The Supreme Court has recognized a First Amendment interest in posting on social media. *See Packingham v. North Carolina*, ___ U.S. ___, 137 S. Ct. 1730, 1737 (2017) ("by prohibiting [offenders] from using [social media] websites, North Carolina with one broad stroke bars access to what for many are the principal sources for ... speaking and listening in the modern public square.... They allow a person with an Internet connection to 'become a town crier with a voice that resonates farther than it could from any soapbox.' In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights.") (citing *Reno v. ACLU*, 521 U.S. 844, 870, (1997)). Thus, Caves has alleged that his social media posts were protected speech for purposes of the first element of this claim.

---

there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

As to the second element, that the plaintiff suffered an adverse action at the hands of the defendant, the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d. Cir. 2001). Whether an action is considered adverse depends on the circumstances in each case. *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)).

Caves alleges that he was housed in segregation in the SRG unit and he alleges many conditions that are significantly harsher than those outside the SRG unit. Caves has plausibly alleged and adverse action.

Finally, Caves alleges that the action was taken solely because he posted on social media. However, this allegation and characterization of the defendants' conduct is not enough to satisfy the third element, a causal connection between the adverse action and the protected speech. Caves was designated an SRG member because he posted information determined to be gang-related and therefore indicative of gang membership. The Court recognizes that some judges within this district have determined that the required causal connection is satisfied under these circumstances. *See Kelly v. Santiago,* Doc. No. 3:18-cv-1796(VAB), 2019 WL 3574631, at *4-6 (D. Conn. Aug. 6, 2019) (finding a plausible retaliation claim against prison officials who placed

pretrial detainee in segregation based on social media posts); *Scozzari v. Santiago*, No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *4 (D. Conn. Apr. 29, 2019) (same). This Court disagrees.

Caves' designation was not made to punish him for posting on social media or to deter him from doing so in the future. Rather the social media posts were merely the evidence used to support his SRG designation. The defendants' use of social media posts and Caves' own statements therein, is no different than if Caves announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit.

"The First Amendment … does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *see United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (admission of rap lyrics and tattoo images in gang trial does not violate First Amendment; "This challenge is meritless … because here the speech is not itself the proscribed conduct. The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [the defendant's] participation in, the alleged RICO enterprise.") (internal quotation marks and citation omitted). Indeed, social media posts and other speech are oft considered indicative of gang membership in criminal cases. *See, e.g., United States v. Garnes*, No. 14-20119, 2015 WL 3574845, at *2 n.1 (E.D. Mich. June 5, 2015) (rejecting First Amendment challenge because rap lyrics relevant to issue of membership in gang); *United States v. Mobley*, No. 1:13-CR-218-CAP-LTW, 2015 WL 3588152, at *4 (N.D. Ga. June 1, 2015) (citing Facebook post displaying gang hand signal in order denying motion to suppress).

In sum, Caves was not punished for using social media. Rather, the social media posts were considered evidence of gang membership. Caves' First Amendment retaliation claim is

dismissed. Whether such evidence was sufficient to support the designation is considered in his due process challenge to the placement.

### Fourteenth Amendment Substantive Due Process Claims

Caves invokes the Substantive Due Process in his second, sixth, eighth, and ninth claims. He alleges that the defendants denied his right to substantive due process by forcing him into the SRG Program, using false information to do so, and denying him adequate recreation and medical care.

"A pretrial detainee may not be punished at all under the Fourteenth Amendment, whether ... by deliberate indifference to conditions of confinement, or otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d. Cir. 2017). A pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways. He can show that the defendants were deliberately indifferent to the conditions of his confinement or he can show that the conditions are punitive. *Id.* at 34 n.12. Caves alleges both.

To state a claim for deliberate indifference, Caves first must show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Id*. at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id*. (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are also considered in combination where one combines with another to affect one identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294,

304 (1991); *see also Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").

Caves alleges sufficient facts to demonstrate objectively serious deprivations. He alleges that for 380 days, he was confined to his cell for twenty-three hours per day, had to eat in his cell in close proximity to the toilet, had to shower in unsanitary shower stalls, could visit only with immediate family, had restrictions on phone calls and commissary purchases, was denied exercise, and could not participate in any programs.

To state a deliberate indifference substantive due process claim, Caves must also show that "the defendant-official acted intentionally to impose the alleged condition" or that he "recklessly failed to act with reasonable case to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Caves alleges that the defendants intentionally subjected him to the described conditions because they assumed he was an SRG member. He also alleges that they were aware that he was subject to assault by inmates in the unit and that the conditions were affecting his mental and emotional health. Caves has plausibly alleged intentional conduct or, at a minimum, a reckless failure to act with reasonable care to minimize the risk to which Caves was exposed.

As noted above, substantive due process is violated if the pretrial conditions are punitive. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In considering such a claim, the "court must decide whether the [condition] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. Absent evidence of an "expressed intent to punish on the part of detention facility officials, that determination generally will turn

on 'whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Id.* (citation and brackets omitted) "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.* at 539.

Conversely, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* Legitimate government objectives include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring the detainees' presence at trial," and managing the facility where the detainee is held. *Id.* at 540.

In *Allah v. Milling*, 876 F.3d 48, 58 (2d Cir. 2017), the Second Circuit considered conditions similar to the ones Caves describes and concluded that the conditions were not reasonably related to legitimate governmental objectives. The court noted that "although plausibly related to security concerns in general, [plaintiff's conditions of confinement in the SRG Program] were so excessively harsh as to be punitive. [Plaintiff] was kept in solitary confinement for 23 hours a day for almost seven months…. He received 'absolutely no programming or counselling or therapy' during that period." *Id.* at 58.

Caves alleges that he was designated based on a Facebook post without consideration of his explanation. Although Caves alleges that his designation was reviewed by Director Santiago, the allegations suggest that there was no individualized finding that Caves posed a risk to institutional security or that segregated housing was appropriate for him during pretrial

detention. In addition, Caves alleges that he was previously confined in general population for seven years without incident. Accordingly, Caves' substantive due process claim that his conditions of confinement are punitive may proceed.

### Fourteen Amendment Procedural Due Process Claim

In his fourth and fifth claims, Caves contends that all defendants violated his right to procedural due process at the disciplinary hearing by failing to provide 24-hour advance notice and an opportunity to prepare a defense, denying witnesses and an advocate, denying an opportunity to be heard, and assigning a biased hearing officer. Although Caves describes the hearing as a disciplinary hearing in his list of claims, it is reasonably clear from his other allegations that he is referring to an administrative classification hearing.

On a procedural due process claim, the court evaluates only the procedures used for the hearing officer to reach his decision. *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017). The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974). For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983).

Leaving aside the characterization of the hearing as either disciplinary or administrative, even under the lesser protections of an administrative hearing, Caves has plausibly alleged a

13

procedural due process claim. He alleges that he was not permitted to speak at the hearing or address the charges in any manner, which, if true, means he was not afforded the process required under *Hewitt*. Caves' procedural due process claim will proceed.

### Failure to Respond to Grievances

In his seventh claim, Caves alleges that defendants Papoosha, Martin, and Santiago violated his Fourteenth Amendment rights by denying his grievances, appeals, and letters. Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes … create federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)). As Caves has no constitutionally protected right to file a grievance, any Fourteenth Amendment claim against defendants Papoosha, Santiago, and Martin, for failure to respond to his grievances or letters is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Denial of Congregate Religious Services

In his third claim, Caves alleges that defendants Papoosha, Santiago, and Cook violated his First Amendment right to religious practice by denying him, a Muslim, access to weekly congregate religious services.

The First Amendment Free Exercise Clause requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Prisoners retain some rights under the Free Exercise

Clause. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). Their rights, however, are balanced against legitimate penological objectives. *See id.; Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (government action challenged under the Free Exercise Clause "passes constitutional muster if it is reasonably related to legitimate penological interests").

To state a First Amendment free exercise claim, Caves must make a threshold showing that "the disputed conduct substantially burden[ed] his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75). He must allege facts showing that he sincerely holds a particular belief, that the belief is religious in nature, and that the challenged action substantially burdened his exercise of that belief. *See Ford*, 352 F.3d at 588-91. A belief is substantially burdened where the state has "put[] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (internal quotation marks and citation omitted). In considering whether a prisoner has made the required showing, the court does not "evaluate the objective reasonableness of the prisoner's belief" but considers only whether the prisoner "sincerely holds a particular belief and whether the belief is religious in nature." *Ford*, 352 F.3d at 590.

The Second Circuit has expressed doubt as to whether a prisoner is required to make this threshold showing. *See Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (noting that *Salahuddin* holding regarding substantial burden threshold requirement may have been overruled by *Employment Div. v. Smith*, 494 U.S. 872, 887 (1990), but declining to reach the question); *see also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (noting that the court has not yet decided the issue and assuming that substantial burden requirement applied). District courts within this circuit continue to apply the substantial burden test when addressing free exercise

claims. *See, e.g., Jones v. Annucci,* No. 16-CV-2516(KMK), 2018 WL 910594, at *13

(S.D.N.Y. Feb. 14, 2018) (applying substantial burden test).

Caves alleges that he cannot "pray congregationally, attend Talim services, or go to a

Jumah prayer as he is supposed to every Friday." Doc. No. 7 ¶ 43. Although not overwhelming,

the Court considers these allegations sufficient at this stage of litigation to plausibly allege a

sincerely held religious belief that is being substantially burdened by confinement in the SRG

Program. The First Amendment Free Exercise Clause claim will proceed.

### Supervisory Liability

In the body of the amended complaint, Caves argues that the defendants created or

following an unconstitutional policy or custom. Doc. No. 7 ¶ 63. He also alleges that defendants

Papoosha and Santiago oversee and are responsible for the SRG Program. *Id.* ¶ 47. The Court

considers this a claim for supervisory liability against all four supervisory defendants, Papoosha,

Santiago, Martin, and Cook.

> To state a claim for supervisory liability, a plaintiff must establish that: (1) the
> defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the constitutional violation through a report or
> appeal, failed to remedy the wrong, (3) the defendant created a policy or custom
> under which the unconstitutional practices occurred, or allowed the continuance
> of such a policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference … by failing to act on information indicating that
> unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to

impose supervisory liability prisoner must allege that official had actual or constructive notice of

unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act).

Caves alleges that all defendants were aware of the conditions and indeed that the conditions are the result of the custom and policies surrounding the incarceration of gang affiliated inmates. As the court has already determined that Caves has plausibly alleged substantive due process violations, the supervisory liability claim will proceed against these four defendants as well.

### Official Capacity Claims

Caves seeks damages from the defendants. The Eleventh Amendment prohibits an award of money damages against state officials in their official capacities unless the state has waived this immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1995). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 343 (1979), and Caves alleges no facts suggesting that the state has waived immunity in this case. Thus, Caves cannot receive damages from the defendants in their official capacities. Any claim for damages against the defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### Motion for Preliminary Injunction

On April 3, 2020, Caves filed a motion for preliminary injunction seeking an order to show cause as to why he should not be transferred from the SRG Program and his "label" as an SRG inmate removed.  He also sought an immediate temporary restraining order prohibiting the defendants from using social media posts when designating inmates as SRG affiliated. He attaches several affidavits and various documents to the motion in support of the relief sought.

Because the court has dismissed the First Amendment claims arising out of the use of the social media posts, the motion for a temporary restraining order is DENIED.

With respect to the motion for preliminary injunction, the Court first observes that "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997), *citing, Farmer v. Brennan,* 511 U.S. 825, 846–47, 114 S.Ct. 1970, 1983–84, 128 L.Ed.2d 811 (1994) (in the prison context, "a district court should approach issuance of injunctive orders with the usual caution"). *See also, Streeter v. Hopper,* 618 F.2d 1178, 1181 (5th Cir.1980) ("Courts should proceed cautiously in cases of this kind, to prevent courtroom magnification of the general dangers inherent in prison life from precipitating unnecessary judicial interference in the operation of state prisons."). "This cautious approach to judicial intervention in the prison context is based on concerns of federal judicial competency and comity. … Injunctive relief should therefore be issued in the prison context only in extraordinary circumstances." *Fisher v. Goord, supra.,* at 168.

Notwithstanding, here, Caves alleges that his placement in the SRG Program has resulted in more than one assault by gang members because he himself is not a member of a gang. He alleges that the threat to his safety is ongoing and unaddressed. Accordingly, the Court shall require the defendants to respond to the motion on or before **May 6, 2020**.

**Orders**

The First Amendment retaliation claim premised upon Caves' social media postings, the Fourteenth Amendment claim against defendants Santiago, Papoosha, and Martin for failure to respond to grievances, and the claims for damages against all defendants in their official

capacities are dismissed pursuant to 28 U.S.C. § 1915A(b). The case will proceed on the Fourteenth Amendment substantive and procedural due process claims, the First Amendment Free Exercise claim against defendants Papoosha, Santiago, and Cook, and the supervisory liability claim against defendants Papoosha, Santiago, Martin, and Cook.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant at the address provided on or before Aril 27, 2020, and report to the court on the status of the waiver request on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service which shall include the Complaint **and the Plaintiff's Motion for Preliminary Injunction**.  The U.S. Marshal is directed to effect service of the Complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **April 27, 2020** and to file a return of service on or before **May 6, 2020.**

(3)     T**he Clerk shall** send Caves a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint, this Order **and the Motion for Preliminary Injunction** to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file a response to the motion for preliminary injunction on or before May 6, 2020. The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by November 6, 2020.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed on or before December 6, 2020.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Caves changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Caves must give notice of a new address even if he is incarcerated.  Caves should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Caves has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Caves should also notify the defendants or the attorney for the defendants of his new address.

(10)     Caves shall utilize the Prisoner Efiling Program when filing documents with the court.  Caves is advised that the Program may be used only to file documents with the court.  As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Caves.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of April 2020.

/s/ _____

Kari A. Dooley
United States District Judge